**CERES PARTNERS,**
**Plaintiff–Appellant,**

v.

**GEL ASSOCIATES, Gollust, Tierney and Oliver, Coniston Partners, Coniston Institutional Investors, Gollust and Tierney, Incorporated, Keith R. Gollust, Paul E. Tierney, Jr., and Augustus K. Oliver, Defendants–Appellees.**

No. 390, Docket 89–7666.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1989.

Decided Nov. 8, 1990.

Evan L. Gordon, New York City (Bangser & Weiss, New York City, on the brief), for plaintiff-appellant.

Richard F. Ziegler, New York City (Thomas G. Dagger, Michael S. Sommer, Cleary, Gottlieb, Steen & Hamilton, New York City, on the brief), for defendants-appellees.

Daniel L. Goelzer, Gen. Counsel of the S.E.C., Washington, D.C. (Jacob H. Stillman, Associate Gen. Counsel, Thomas L. Riesenberg, Asst. Gen. Counsel, Rada L. Potts, Atty., Paul Gonson, Solicitor, Washington, D.C., of counsel), filed a brief for amicus curiae S.E.C. in support of appellant.

Patricia A. McGovern, Harris J. Amhowitz, Leonard P. Novello, Eldon Olson, New York City (Carl D. Liggio, New York City, of counsel), filed a brief for amici curiae Ernst & Young, Coopers & Lybrand, Peat Marwick Main & Co., and Price Waterhouse, in support of appellees.

Before KEARSE, ALTIMARI, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Ceres Partners ("Ceres") appeals from an order of the United States District Court for the Southern District of New York, Milton Pollack, *Judge*, summarily dismissing its complaint for damages against defendants GEL Associates ("GEL"), *et al.*, for violation of §§ 10(b), 14(d), and 14(e) of the Securities Exchange Act of 1934, as amended by the Williams Act, Pub.L. No. 90–439, § 3, 82 Stat. 455 (1968) (collectively "1934 Act" or "Act"), 15 U.S.C. §§ 78j(b), 78n(d), and 78n(e) (1988), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5 (1989). Borrowing the statute-of-limitations period that would be applied to such claims in accordance with New York law, the district court found that Ceres's claims were time-barred. 714 F.Supp. 679 (1989). On appeal, all of the parties urge us to abandon this Circuit's established rule that the statute of limitations applicable to claims under §§ 10(b) and 14 of the 1934 Act is that provided by the most analogous state statute, and instead to adopt a uniform federal limitary period on such claims. They disagree, however, on what period should be selected. Ceres contends that a five-year period should be selected, and that on this basis the judgment dismissing the complaint should be vacated. As discussed below, the judgment would be affirmed if we were to follow this Circuit's existing precedent and borrow a state statute of limitations. We conclude, however, that plaintiffs' federal securities law claims should be governed by a uniform federal limitary period, and under the period we adopt here, the judgment is affirmed.

## I. BACKGROUND

According to the complaint, Ceres is a general partnership with its principal office and place of business located in New Jersey. Ceres acts as a broker-dealer and engages in risk arbitrage for its own account. GEL is a Bahamas limited partnership; the other defendants are affiliated with GEL through various partnership arrangements. Defendant Gollust, Tierney and Oliver ("GTO"), a New Jersey general partnership, is the general partner of GEL. Defendant Gollust and Tierney, Inc., a New Jersey corporation, is a general partner of GTO. Each of the individual defendants is

both a general partner of GTO and a general partner of defendant Coniston Partners ("Coniston"), a New Jersey limited partnership. The complaint alleges that Coniston is well known in the financial community for acquiring stakes in companies considered vulnerable to takeover threats.

In August 1986, Gelco Corporation ("Gelco" or the "company"), a Minnesota corporation whose stock was listed on the New York Stock Exchange, announced a restructuring plan that included an offer to purchase up to 3,000,000 of its own shares for $17–$20 per share. Prior to September 25, 1986, Ceres, in the course of its risk arbitrage business, purchased 102,100 shares of Gelco stock in anticipation of Gelco's self-tender.

On September 25, 1986, when the market price of Gelco shares was approximately $18 per share, Ceres sold 90,000 shares of its Gelco stock to Jefferies & Co., a broker acting on behalf of GEL, for $18.50 per share. On the same day, Ceres also sold short 29,700 shares.

After the close of the market on September 25, 1986, Coniston publicly announced that GEL had acquired approximately 17.6% of Gelco's stock and that Coniston intended to offer $22.50 per share in cash for Gelco's outstanding shares, subject to certain conditions. The price of Gelco stock rose to more than $22 a share the next day, and Ceres was eventually forced to cover its short position at an average price of $22.875 per share. On October 6, 1986, GEL filed on behalf of itself and the other defendants a Schedule 13D report with the SEC, disclosing defendants' ownership of more than 5% of Gelco's stock and describing their plans to acquire the company.

On January 11, 1989, Ceres commenced the present action, alleging that GEL's stock purchases from Ceres and others on September 25, 1986, constituted a *de facto* tender offer and that GEL's failure, prior to those purchases, to file a Schedule 14D–1 report announcing a tender offer violated §§ 14(d) and 14(e) of the 1934 Act. The complaint also alleged that defendants violated § 10(b) of the 1934 Act and Rule 10b–5 thereunder by failing to disclose to Ceres their intention to extend a merger proposal to Gelco. Ceres sought to recover the difference between the price of the Gelco shares it sold to Jefferies & Co. and the price Ceres would have received had it known of defendants' plans, plus the losses it incurred in covering its short sales.

Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that (1) the complaint failed to state a claim on which relief could be granted, and (2) the face of the complaint revealed that Ceres's claims were barred by the applicable statute of limitations. In support of their statute-of-limitations contention, defendants argued that under existing Circuit precedent the district court should apply New York law, that New York law required application of the statute of limitations that would be used in New Jersey as the state of the plaintiff's residence, and that a court sitting in New Jersey would be required by *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.) (en banc) ("*Data Access*"), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), to rule 1934 Act claims barred if not asserted within one year of their discovery, but in no event more than three years after their accrual (the "one-year/three-year" period). Defendants argued, alternatively, that the court should decline to refer to state law and should instead apply a uniform federal statute of limitations, which should be the one-year/three-year period adopted in *Data Access*.

In opposition to defendants' motion, Ceres agreed that the court should ignore state law and borrow the most analogous federal period of limitations; but it argued that the most appropriate analogue was the five-year limitations period applicable to the express right of action provided by the Insider Trading Sanctions Act of 1984, 15 U.S.C. § 78t(d) (1988), as amended by the Insider Trading and Securities Fraud and Enforcement Act of 1988, 15 U.S.C. § 78t–1 (1988) (collectively "Insider Trading Act" or "ITA"). The ITA amendment was enacted some six months after the decision in *Data Access*.

The district court, in an opinion reported at 714 F.Supp. 679 (1989), granted defen-

dants' motion to dismiss the complaint as time-barred. Though noting that it would be preferable to have 1934 Act claims governed by a uniform federal statute of limitations, the court felt constrained to follow this Circuit's precedents such as *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977), and it thus looked to the New York statutes to determine the applicable statute of limitations. Since Ceres is a New Jersey resident, the court determined that New York courts would use whatever statute of limitations would be applied to these claims by a court sitting in New Jersey. *See* N.Y. Civ.Prac. L. & R. ("CPLR") § 202 (McKinney 1990). Since the federal courts have exclusive jurisdiction over claims under the 1934 Act, *see* 15 U.S.C. § 78aa (1988), and a federal court sitting in New Jersey would be bound to follow the decisions of the Third Circuit, the district court concluded that Ceres's claims were governed by the one-year/three-year limitations period adopted by the Third Circuit in *Data Access*. The court also concluded that even if it were free to ignore state law and borrow from a federal statute of limitations, the Insider Trading Act's five-year period would not be an appropriate choice.

Since Ceres acknowledged that it had discovered the pertinent information on or shortly after September 25, 1986, *i.e.*, more than one year prior to the institution of the present action, the court dismissed the complaint as time-barred. This appeal followed.

## II. DISCUSSION

On appeal, Ceres pursues its contention that the federal courts should not borrow statutes of limitations governing claims under §§ 10(b) and 14 of the 1934 Act by looking to state law. Contending that the most appropriate limitary period would be the five-year statute of limitations contained in the Insider Trading Act, Ceres argues that its complaint therefore should not have been dismissed on statute-of-limitations grounds. The SEC has filed a brief as *amicus curiae* in support of Ceres's position.

Defendants renew their contention that the most appropriate limitary period is the one-year/three-year period borrowed by the Third Circuit in *Data Access* from the limitations periods applicable to most express causes of action provided in the 1934 Act and the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § .77a *et seq.* (1988). They urge us to adopt this period as a uniform federal statute of limitations applicable to claims under §§ 10(b) and 14. Several major accounting firms have filed a brief as *amici curiae* in support of defendants' position.

For the reasons below, we conclude that the judgment dismissing the complaint should be affirmed.

### A. Application of Existing Second Circuit Precedent

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985); *see, e.g., International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–05, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966) ("*Auto Workers v. Hoosier Cardinal Corp.*"); *Campbell v. Haverhill*, 155 U.S. 610, 617, 15 S.Ct. 217, 220, 39 L.Ed. 280 (1895). In the present case we are dealing with claims under §§ 10(b) and 14 of the 1934 Act. The Act does not expressly grant private rights of action under these sections. Rather, those rights have been implied by the courts under § 10(b), *see, e.g., Superintendent of Insurance of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971), and under § 14(e), *see, e.g., Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), and we assume for purposes of this appeal that such a right of action may be implied under § 14(d). Naturally, since the private rights of action under these sections are implied by the courts rather than expressly provided by the statute, Congress has not specified for them a controlling statute of limitations.

With respect to implied causes of action under the federal securities laws, this Cir-

cuit, like most others, has consistently held that the statute of limitations should be adopted by reference to the pertinent laws of the forum state, *see, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir.1983) (§ 10(b)); *ITT v. Cornfeld,* 619 F.2d 909, 928–29 (2d Cir.1980) (Rule 10b–5); *Arneil v. Ramsey,* 550 F.2d at 779 (§ 10(b)); *Sack v. Low,* 478 F.2d 360, 365 (2d Cir.1973) (§ 10(b) and Rule 10b–5); *Stull v. Bayard,* 561 F.2d 429, 431–32 (2d Cir.1977) (§ 14(e)), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). These laws include those directing courts of the forum state to borrow the statute of limitations of another jurisdiction. *See Arneil v. Ramsey,* 550 F.2d at 779; *Sack v. Low,* 478 F.2d at 365.

In order to determine what statute of limitations New York would apply, a district court sitting in New York must consider the borrowing rules found in N.Y. CPLR § 202. With respect to nonresidents of New York, § 202 provides, in pertinent part, that

> [a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued....

We have construed this provision as meaning that in a § 10(b) action, the cause of action accrues "where 'its economic impact is felt, normally the plaintiff's residence,' " *Arneil v. Ramsey,* 550 F.2d at 779 (quoting *Sack v. Low,* 478 F.2d at 366). Thus, if a suit brought in the "place" of the plaintiff's residence would be time-barred, the suit in a New York federal court is time-barred.

We agree with the district court that application of these principles to the present case would require dismissal of the action. Section 202's reference to the "place" where the cause of action accrued does not limit the borrowing court's focus to state law. Section 27 of the 1934 Act grants the federal district courts exclusive jurisdiction to enforce its provisions. 15 U.S.C. § 78aa. Thus, in order to enforce its §§ 10(b) and 14 claims in New Jersey, Ceres would have had to bring suit in the

federal district court there. The district court in New Jersey would be bound to follow the ruling of the Third Circuit in *Data Access,* 843 F.2d at 1550, that § 10(b) claims must be brought within one year of discovery and not more than three years after accrual. The district court in the present case noted, and we agree, that ordinarily the same period of limitations governs actions under § 10(b) and § 14, and that there is no reason to believe the Third Circuit would conclude that a different period governs the latter claims. Thus, since Ceres concedes that it cannot meet the one-year/three-year test, application of the existing precedent of this Circuit would have required the dismissal of the complaint. We turn now to consideration of whether such claims should be governed by a uniform federal period of limitations.

### B. Whether a Uniform Federal Limitary Period Should Be Adopted

#### 1. The Appropriateness of Reference to State Laws

The rationale for referring to state law in cases where Congress has not expressly provided a statute of limitations is derived from the Rules of Decision Act, which states that unless the Constitution or Acts of Congress otherwise require or provide, "[t]he laws of the several states ... shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply," 28 U.S.C. § 1652. *See Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. at 703–04, 86 S.Ct. at 1112; *see generally Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462–67, 95 S.Ct. 1716, 1721–24, 44 L.Ed.2d 295 (1975). Somewhat counterintuitively, it was held nearly a century ago that the statutory phrase "where they apply" was not meant to exclude reference to state laws for "causes of action created by Congressional legislation and enforceable only in the Federal courts." *Campbell v. Haverhill,* 155 U.S. at 614, 15 S.Ct. at 219; *see id.* at 616–21, 15 S.Ct. at 219–21. Hence, the federal court could be required to borrow whatever period one state court would conclude a sister state's court might

apply in a case over which neither has any jurisdiction.

The practice of looking to state law to determine the applicable statute of limitations for implied causes of action under the federal securities laws has been the target of considerable criticism. *See, e.g.,* L. Loss, *Fundamentals of Securities Regulation* 992–1003 (2d ed. 1988); 3A H. Bloomenthal, *Securities and Federal Corporate Law,* §§ 8.31[3][b]–[k], at 8–156.8 to 8–156.-48 (1990); Ruder & Cross, *Limitations on Civil Liability Under Rule 10b–5,* 1972 Duke L.J. 1125, 1142–50; Schulman, *Statutes of Limitation in 10b–5 Actions: Complication Added to Confusion,* 13 Wayne L.Rev. 635 (1967); Block & Barton, *Statutes of Limitations in Private Actions Under Section 10(b)—A Proposal for Achieving Uniformity,* 7 Sec.Reg.L.J. 374 (1980); *see also Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385, 1389 (7th Cir.1990) ("With a unanimity unmatched in any other corner of securities law, everyone wants a simpler way—and to everyone that means a uniform federal statute of limitations.").

Though " '[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations,' " *Wilson v. Garcia,* 471 U.S. at 266, 105 S.Ct. at 1941 (quoting *Chardon v. Fumero Soto,* 462 U.S. 650, 667, 103 S.Ct. 2611, 2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)), and though federal securities regulation is inherently national in scope and in need of uniform rules, the borrowing of state law for statutes of limitations achieves precisely the opposite. For example, there is no uniformity in either the type of state limitations statute from which the federal courts borrow or the periods provided by the states for a given category of action. Some courts, including our own, have looked to a state's statute of limitations on claims of fraud, *see, e.g., Armstrong v. McAlpin,* 699 F.2d at 86–87 (applying New York's statute allowing two years after discovery or six years after accrual, whichever is later); *Davis v. Birr, Wilson & Co.,* 839 F.2d 1369, 1369–70 (9th Cir.1988) (applying California's three-year fraud stat-

ute); *Marx v. Centran Corp.,* 747 F.2d 1536, 1551 (6th Cir.1984) (applying Ohio's four-year fraud statute), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); some courts have looked to a state's blue-sky laws, *see, e.g., Harris v. Union Elec. Co.,* 787 F.2d 355, 360 (8th Cir.) (applying Missouri's two-year statute), *cert. denied,* 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *Cahill v. Ernst & Ernst,* 625 F.2d 151, 153–56 (7th Cir.1980) (applying Wisconsin's one-year/three-year statute); still others have looked to a state's statute of limitations for personal injury actions, *see, e.g., Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 124 n. 2, 127 (1st Cir.1987) (applying Massachusetts's three-year statute and noting that a two-year period applies to claims arising prior to 1974), or to a general catchall statute of limitations, *see, e.g., Holmes v. Bateson,* 434 F.Supp. 1365, 1379 (D.R.I. 1977) (applying Rhode Island's six-year period), *modified,* 583 F.2d 542, 561–62 (1st Cir.1978) (declining to choose between Rhode Island's three-year personal injury statute and its six-year catchall statute).

Further, far from achieving any semblance of national uniformity, reference to state laws generally results in a lack of uniformity even within a given circuit. Thus, within our Circuit, two-, six-, and six-plus year statutes have been applied. *Compare Clute v. Davenport Co.,* 584 F.Supp. 1562, 1577 (D.Conn.1984) (Connecticut's two-year period), *with Bartels v. Algonquin Properties, Ltd.,* 471 F.Supp. 1132, 1148–49 (D.Vt.1979) (Vermont's six-year period), *and Armstrong v. McAlpin,* 699 F.2d at 86–87 (New York's period of six years after accrual or two years after discovery, whichever is longer). In the First Circuit, two-, three- and six-year statutes have been applied. *Compare Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 905–06 (D.Me.1971) (applying Maine's two-year period), *with General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 11 (1st Cir.1986) (applying Massachusetts's three-year period); *and Holmes v. Bateson,* 434 F.Supp. at 1379 (applying Rhode Island's six-year period),

*modified,* 583 F.2d at 561–62 (declining to choose between Rhode Island's three-year and six-year periods). In the Fourth Circuit, one-, two-, and three-year statutes may be applied. *Compare O'Hara v. Kovens,* 625 F.2d 15, 17–18 (4th Cir.1980) (applying Maryland's one-year period), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981), *with Reid v. Madison,* 455 F.Supp. 1066, 1067 (E.D.Va.1978) (noting possible application of Virginia's two-year period), *and Baker v. Wheat First Securities,* 643 F.Supp. 1420, 1423 (S.D.W. Va.1986) (applying West Virginia's three-year period). The Sixth Circuit applies three-, four-, and six-year statutes. *Compare Herm v. Stafford,* 663 F.2d 669, 677–78 (6th Cir.1981) (Kentucky's three-year period), *with Marx v. Centran Corp.,* 747 F.2d at 1551 (Ohio's four-year period), *and Charney v. Thomas,* 372 F.2d 97, 98–99 (6th Cir.1967) (Michigan's six-year period). Prior to 1990, the Seventh Circuit applied two-, three-, and one-year/three-year statutes. *Compare La Rosa Building Corp. v. Equitable Life Assurance Society,* 542 F.2d 990, 991–93 (7th Cir.1976) (Indiana's two-year period), *with Norris v. Wirtz,* 818 F.2d 1329, 1331–33 (7th Cir.) (Illinois's three-year period), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), *and Cahill v. Ernst & Ernst,* 625 F.2d at 153–56 (Wisconsin's one-year/three-year period). The Ninth Circuit applies two- and three-year statutes. *Compare Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1412 (9th Cir.1987) (Montana's two-year period), *with Davis v. Birr, Wilson & Co.,* 839 F.2d at 1369–70 (California's three-year period). *See generally* American Bar Association Committee on Federal Regulation of Securities, *Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus.Law. 645, 650–61 (1986) (*"ABA Task Force Report"*).

As a consequence, if two suits are brought in different states seeking damages for a single act in violation of the federal securities laws, one suit may be barred while the other is not. Indeed, in a single such suit brought in a state whose law requires borrowing of the laws of an out-of-state plaintiff, the claims of some plaintiffs may be time-barred while those of other plaintiffs are not. *See, e.g., Kronfeld v. Advest, Inc.,* 675 F.Supp. 1449, 1457–58 & n. 21 (S.D.N.Y.1987) (applying a total of 26 separate statutes of limitations); *In re National Student Marketing Litigation,* Fed.Sec.L.Rep. ¶ 97,926, 1981 WL 1617 (D.D.C.1981) (noting possible applicability of 34 different states' statutes of limitation). The ABA Task Force concluded that this

> disarray serves no public purpose. This uncertainty and lack of uniformity promote forum shopping by plaintiffs and result in wholly unjustified disparities in the rights of parties litigating identical claims in different states. Neither plaintiffs nor defendants can determine their rights with any certainty. Vast amounts of judicial time and attorneys' fees are wasted. Moreover, managements of publicly held companies, as well as their auditors and attorneys, are frequently unable to assess the impact of possible litigation under rule 10b–5. This deprives investors of information adequate for informed evaluation of such companies' potential liabilities.

*ABA Task Force Report,* 41 Bus.Law. at 647 (footnote omitted).

While the Supreme Court has noted the prevailing practice of borrowing state law for limitations periods for federal securities law claims, *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Herman & MacLean v. Huddleston,* 459 U.S. 375, 384 n. 18, 103 S.Ct. 683, 688 n. 18, 74 L.Ed.2d 548 (1983), it has not explicitly approved the practice, and its recent discussions of such borrowing for other types of claims appear to leave open the possibility that the courts should look to a federal statute instead. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (*"DelCostello"*); *see also Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct.

621, 102 L.Ed.2d 665 (1989); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938.

In *DelCostello,* the Court considered the claim of a union member against his union for breach of the duty of fair representation and ruled that there was

available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels.

462 U.S. at 169, 103 S.Ct. at 2293. Though adopting the federal statute, *i.e.,* the 6-month period provided by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), for asserting unfair labor practice charges to the NLRB, the Court stated that this selection of federal law should be regarded as an exception rather than a change in the general rule:

We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.

*Id.* at 171, 103 S.Ct. at 2294.

The Supreme Court next considered the borrowing issue in *Wilson v. Garcia,* in the course of determining what statute of limitations should be applied to civil rights actions brought under 42 U.S.C. § 1983. It noted that § 1988 of 42 U.S.C. provides that the law to be applied in adjudicating civil rights claims is to be in "conformity with the laws of the United States, so far as such laws are suitable" and that state law shall apply only "so far as the same is not inconsistent with" federal law. 42 U.S.C. § 1988. The Court stated that "[t]his mandate implies that resort to state law ... should not be undertaken before principles of federal law are exhausted," 471 U.S. at 268, 105 S.Ct. at 1943, and that "[t]his requirement emphasizes 'the predominance of the federal interest' in the borrowing process, taken as a whole." *Id.* at

269, 105 S.Ct. at 1943 (quoting *Burnett v. Grattan,* 468 U.S. 42, 48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984)). The *Wilson* Court noted that

when the federal claim differs from the state cause of action in fundamental respects, the State's choice of a specific period of limitation is, at best, only a rough approximation of "the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."

*Wilson v. Garcia,* 471 U.S. at 271, 105 S.Ct. at 1944 (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. at 463–64, 95 S.Ct. at 1721–22). Nonetheless, noting that the focus of most § 1983 actions is conduct confined within a single state, the *Wilson* Court concluded that there was no warrant for selecting a uniform nationwide limitations period for § 1983 claims, and decided that a single state limitary period should be chosen for such actions within each state. 471 U.S. at 275, 105 S.Ct. at 1946.

In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* the Supreme Court ruled that a uniform statute of limitations, borrowed from the Clayton Act, 15 U.S.C. § 15(b), should be applied to civil actions under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The Court noted that a clear majority of the Court had rejected the notion that the most analogous state statute of limitations must "always" be applied when a federal statute is silent on the proper limitations period. 483 U.S. at 146, 107 S.Ct. at 2762. The Court stated that

[g]iven our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law. In some limited circumstances, however, our characterization of a federal claim has led the Court to conclude that "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress

would choose to adopt state rules at odds with the purpose or operation of federal substantive law." .... While the mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations, in some circumstances the Court has found it more appropriate to borrow limitation periods found in other federal, rather than state, statutes:

> "[A]s the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods. Nevertheless, *when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.*"

483 U.S. at 147–48, 107 S.Ct. at 2762–63 (quoting *DelCostello*, 462 U.S. at 161, 171–72, 103 S.Ct. at 2289, 2294) (emphasis ours).

In concluding that there should be a uniform federal limitary period governing civil RICO claims, the *Agency Holding* Court noted the lack of any satisfactory state analogue to RICO and the fact that RICO cases commonly involve interstate transactions, raising the possibility that various statutes of limitations of any of several states could govern any given RICO claim. Contrasting these facts with the nature of § 1983 claims, which most commonly challenge conduct that occurred wholly within one state, the Court stated:

> The multistate nature of RICO indicates the desirability of a uniform federal statute of limitations. With the possibility of multiple state limitations, the use of state statutes would present the danger of forum shopping and, at the very least, would "virtually guarante[e] ... complex and expensive litigation over what should be a straightforward matter." ....

Moreover, application of a uniform federal limitations period avoids the possibility of the application of .unduly short state statutes of limitations that would thwart the legislative purpose of creating an effective remedy.

*Id.* 483 U.S. at 154, 107 S.Ct. at 2766 (quoting Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 392 (1985)).

Most recently, in *Reed v. United Transportation Union*, the Court reiterated that

> the general rule [is] that statutes of limitation are to be borrowed from state law. We decline to borrow a state statute of limitations only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."

488 U.S. at 324, 109 S.Ct. at 625 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2295). The *Reed* Court, ruling that these considerations mandated a uniform state-law analogy for a union member's freedom-of-speech claim under 29 U.S.C. § 411(a)(2), noted that resort to federal law remains "a narrow exception to the general rule." 488 U.S. at 324, 109 S.Ct. at 625.

Among the themes to be distilled from the Supreme Court's recent borrowing discussions are that selection of a uniform federal limitations period may be warranted (1) where the statutory claim in question covers a multiplicity of types of actions, leading to the possible application of a number of different types of state statutes of limitations, (2) where the federal claim does not precisely match any state-law claim, (3) where the challenged action is multistate in nature, perhaps leading to forum shopping and inordinate litigation expense, and (4) where a federal statute provides a very close analogy.

Against the background of Supreme Court inroads into the traditional practice of borrowing from state law, and the crazy-quilt consequences of borrowing from state law for federal securities laws claims, two of our sister circuits, the Third Circuit in

*Data Access,* 843 F.2d 1537, and more recently the Seventh Circuit in *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385, have now abandoned state-law borrowing in the interest of establishing more uniform federal standards for the limitations period governing claims under § 10(b) and Rule 10b–5. Several other circuits have continued to use the traditional borrowing methods. *See Bath v. Bushkin, Gaims, Gaines and Jonas,* 913 F.2d 817 (10th Cir.1990) (declining to follow *Data Access*); *Smith v. Duff and Phelps, Inc.,* 891 F.2d 1567 (11th Cir.1990) (declining to follow *Data Access* without consideration en banc); *Nesbit v. McNeil,* 896 F.2d 380 (9th Cir.1990) (same). The Ninth Circuit, without discussing *Data Access,* has recently held that the most analogous state statute of limitations continues to govern § 10(b) claims and applied the forum state's two-year fraud period, and we note that the Supreme Court has recently granted certiorari in that case. *See Reitz v. Leasing Consultants Associates,* 895 F.2d 1418 (9th Cir.1990), *cert. granted,* — U.S. ——, 111 S.Ct. 242, 112 L.Ed.2d 201 (1990).

The Third Circuit in *Data Access* began by analyzing (1) whether all claims arising out of the federal statute should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case; and (2) whether a period found in a federal statute clearly provides a closer analogy than available state statutes. It concluded that there are a number of different types of claims under § 10(b) and Rule 10b–5 and that they differ significantly from claims under state law:

> Just as civil RICO is similar to actions under 42 U.S.C. § 1983 in that both encompass numerous and diverse topics and subtopics, so do[ ] section 10(b) and Rule 10b–5 embrace a galaxy of actions. Some of these actions are brought by securities purchasers.... Others are brought by sellers of securities.... Some of the sellers' actions do not come within the ambit of state blue sky laws, because these laws often apply only to purchasers of securities, ... or do not

allow recovery of damages by the plaintiffs involved.

843 F.2d at 1543–44. The court also noted that § 10(b) and Rule 10b–5 actions differ in material ways from traditional common-law fraud actions, pointing out that the Supreme Court has refused to treat these causes of action identically, *see Herman & MacLean v. Huddleston,* 459 U.S. 375, 388–90, 103 S.Ct. 683, 690–92, 74 L.Ed.2d 548 (1983) (though common-law fraud action must be proven by clear and convincing evidence, § 10(b) claim may be proven by a preponderance of the evidence); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 744–45, 95 S.Ct. 1917, 1929–30, 44 L.Ed.2d 539 (1975) (though common-law fraud claim may be asserted by any defrauded person, § 10(b) claim may be asserted only by an actual purchaser or seller of securities). Thus, the court concluded that "far from being a mirror image or a reasonable facsimile of common law fraud, actions brought under section 10(b) and Rule 10b–5 appear to be *sui generis.*" *Data Access,* 843 F.2d at 1545.

In light of the unique characteristics of federal securities litigation, the *Data Access* court concluded that

> the federal schema of limitations expressly set forth in the Securities Exchange Act of 1934 "clearly provides a closer analogy than available state statutes," *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and that "the federal policies at stake [in section 10(b) and Rule 10b–5 actions] and the practicalities of litigation make [the federal] rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.*

*Data Access,* 843 F.2d at 1545 (brackets in *Data Access*).

The Third Circuit noted that when Congress enacted the 1934 Act, it selected the one-year/three-year period to govern the rights of action provided in § 9, 15 U.S.C. § 78*i* (e) (manipulation of security prices), and § 18(a), 15 U.S.C. § 78*r*(a) (misleading statements in SEC filings). At the same time, it amended the statute of limitations under § 13 of the 1933 Act, 15 U.S.C. § 77m, to provide the one-year/three-year

period for all private rights of action under that statute. Four years later, Congress provided the same one-year/three-year statute of limitations for rights of action under section 29(b) of the 1934 Act, *id.* § 78cc(b) (voidability of illegal contracts). *Data Access*, 843 F.2d at 1545–46.

Since "[t]he necessity for uniform federal remedies in securities cases would seem to demand recourse to a uniform federal statute of limitations," the Third Circuit concluded that

> [i]t is difficult to consider a limitations statute that better reflects the "federal policies at stake" and the "practicalities of litigation" in a case based on the Securities Exchange Act of 1934 than those provisions of the Act that explicitly and expressly state such a period. Fidelity to the strong federal policies announced in *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.), *cert. denied*, [484 U.S. 943], 108 S.Ct. 329 [98 L.Ed.2d 356] (1987), and *Roberts* [*v. Magnetic Metals Co.*, 611 F.2d 450, 463 (3d Cir.1979) ] (Seitz, C.J., dissenting), would strongly counsel that we adopt the 1934 Act limitations period. Indeed, because the Supreme Court opened the door to borrowing relevant federal limitations statutes, and in light of the congressional philosophy and purposes set forth in the 1933 and 1934 Acts that have been so consistently emphasized and implemented by the federal courts, it would seem bizarre if not anomalous to go beyond the express statutes of limitations contained in provisions of the 1934 Act.

*Data Access*, 843 F.2d at 1549. Accordingly, the Third Circuit held that the appropriate statute of limitations for actions under section 10(b) and Rule 10b–5 is one year after discovery of the conduct alleged to constitute the violation, but no more than three years after the occurrence of such conduct. *Id.* at 1550.

In *Short v. Belleville Shoe Manufacturing Co.*, the Seventh Circuit noted that "[f]ederal courts are so accustomed to turning to state periods of limitations that we (and our colleagues in other circuits) did this on auto-pilot, without discussing

whether something differentiated securities laws from other statutes." 908 F.2d at 1387. The *Short* court found at least three differentiating facets. First, though it is not illogical to infer that Congress intended the courts to borrow from state law where it expressly provided a right of action but was silent as to the proper limitations period, "Congress could hardly have anticipated that courts would turn to state law for a period of limitations, when Congress did not create the right of action in the first place." *Id.* Second, whenever Congress expressly created a right of action under the securities laws, it also specified a period of limitations. Thus, in those statutes, "[f]or every statutory right of action there is a corresponding statute of limitations.... There can be no presumption that Congress meant courts to look to state law, when every time Congress has authorized a federal remedy it has also created a federal period of limitations." *Id.* at 1387–88. Third, the *Short* court noted that since the securities acts do not apply unless the acts occurred in interstate commerce, the statutes of at least two states could be applied in any given case. Further, many states have statutes of limitations applicable to claims for fraud and others applicable to claims under state blue sky laws; and the frequent revamping of the blue sky laws creates additional questions as to the applicable state statutes of limitations. Given Congress's enactment of national rules against securities fraud in the belief that national law ought to govern such multi-state transactions, the subjection of claims under those laws to a multiplicity of state-law statutes of limitations is inconsistent with the congressional purpose.

The *Short* court concluded that resort to state law was thus inappropriate for claims under § 10(b) and Rule 10b–5 and that a more appropriate analogy was to be found in the 1934 Act itself.

> Congress has spoken directly to the appropriate statute of limitations for litigation of the sort Short presses. When the statute contains not only a statute of limitations for every express right of action, but also an express right of action quite similar to the implied right of ac-

tion, then the federal statute "clearly provides a closer analogy than available state statutes."

*Id.* at 1388 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294).

■ We agree with the Third and Seventh Circuits that the application of state statutes of limitations to claims under the 1934 Act is not particularly appropriate. Section 10(b) and Rule 10b–5, designed to promote full disclosure, differ in several material respects from state-law claims. In some respects, the federal securities claim is narrower than a common-law fraud claim in that the challenged behavior must bear on securities having a nexus with interstate commerce. On the other hand, the goal of promoting full disclosure is broader than that of common-law principles relating to fraud, and leads to the imposition of a fiduciary-type level of disclosure on certain classes of individuals and institutions. Further, the fraud element of the federal claim may be established not only by proof of a materially misleading misstatement or omission, but also by proof of, *e.g.*, a device, scheme, or artifice to defraud, or of any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person. The types of claims that may be brought under these federal laws, and the theories developed to substantiate those claims, range far beyond those developed under common-law principles of fraud. *See generally* Loss, *Fundamentals of Securities Regulation* at 716 ("the courts have repeatedly said that the fraud provisions in the SEC Acts ... are not limited to circumstances that would give rise to a common law action for deceit"). For example, § 10(b) and Rule 10b–5 have been held to allow claims based on a "fraud on the market" theory, *see Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), which, *inter alia*, creates a rebuttable presumption of reliance and shifts to the defendant the burden of proof as to that element of the claim; or claims based on a brokerage firm's misuse of its client funds by clearing its transactions through geographically remote banks, *see Ellis v. Merrill Lynch & Co.*, 664 F.Supp. 979, 980–81 (E.D.Pa.1987);

or claims of insider trading based on a theory of the insider's misappropriation of corporate information, *see SEC v. Materia*, 745 F.2d 197, 202–03 (2d Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985); or claims of "churning," *i.e.*, the broker's causing the customer's account to engage in an excessive number of transactions in order to generate greater commissions, *see generally* Note, *Churning by Securities Dealers*, 80 Harv. L.Rev. 869 (1967). We think the variety of claims that may be asserted under these federal provisions, and their lack of analogue in state law, support the view that reference to state statutes of limitation is not particularly appropriate.

This conclusion is enhanced by the multistate nature of most of the challenged acts. Unlike claims under § 1983, the conduct challenged in a federal securities claim is not normally confined to a single state. As the Seventh Circuit recognized, the need for an interstate nexus means that at least two states will be involved; and the national character of actions relating to securities registered on stock exchanges is indisputable. It is hardly uncommon for a single lawsuit to encompass the claims of plaintiffs from a large number of states. For example, in *Kronfeld v. Advest, Inc.*, 675 F.Supp. at 1457–58 & n. 21, application of the state-law borrowing principle forced the district court to apply 26 separate statutes of limitations. In *In re National Student Marketing Litigation*, Fed.Sec.L.Rep. ¶ 97,926, the district court noted the possible applicability of 34 different states' statutes of limitation. Indeed, there is no theoretical reason that residents of all 50 states could not be joined in a single suit or represented in a class action, with the result that more than 50 not-particularly-appropriate state statutes could provide the sources for determining whether the respective claims of otherwise identically situated plaintiffs were time-barred. Given Congress's enactment of specific periods of limitation for every private right of action that it expressly provided in the federal securities laws, we conclude that judicial selection of a uniform nationwide limita-

tions period is what Congress would have intended for private rights of action judicially implied under those laws.

### 2. The More Suitable Federal Statutory Reference

■ Finally, we join the Third and Seventh Circuits in the view that the 1934 Act itself clearly provides an analogy that is significantly more appropriate than state law. The Act expressly provides for a number of private actions *i.e.*, under §§ 9, 16(b), 18(a), and 29(b), 15 U.S.C. §§ 78*i* (e), 78p(b), 78r(a), and 78cc(b). The goal of these sections, as for § 10(b), is to ensure full disclosure, to prohibit conduct recognized as manipulative and deceptive, and to give the SEC the authority to take steps to counter other conduct having the same effect. *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. at 204–05, 96 S.Ct. at 1386 (quoting S.Rep. No. 792, 73d Cong., 2d Sess. 6 (1934): "[E]ffective regulation must include several clear statutory provisions reinforced by penal and civil sanctions, aimed at those manipulative and deceptive practices which have been demonstrated to fulfill no useful function. These sanctions are found in Sections 9, 10 and 16."). Thus, the actions available under the 1934 Act share common goals.

To achieve these goals, §§ 9(e) and 18(a) create private rights of action for various types of fraud, for which a one-year/three-year statute of limitations is provided. *See* 15 U.S.C. §§ 78*i* (e) and 78r(c). These rights of action are closely related to the right of action implied under § 10(b) and Rule 10b–5. For example, § 18(a) grants a right of action to a person who purchased securities in reliance on a statement in any document filed pursuant to the 1934 Act, which statement was, at the time it was made, false or misleading as to any material fact. Such a purchaser could instead pursue this type of claim under § 10(b). *See, e.g., Wilson v. Great American Industries, Inc.*, 855 F.2d 987, 991 (2d Cir. 1988). Similarly, § 9(e) creates civil liability for any person who willfully participates in any of the manipulative marketing practices prohibited in §§ 9(a), (b), or (c) of the

Act. For example, a § 9 claim could be brought against a

dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the security, ... for the purpose of inducing the purchase or sale of such security, [for] any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact.

15 U.S.C. § 78*i* (a)(4). Suit against such a person for these acts could as easily be brought under Rule 10b–5, which prohibits the making of

any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b–5.

There is also permissible overlap between actions under § 10(b) and those under § 11 of the 1933 Act, 15 U.S.C. § 77k. Section 11 grants a private right of action to the purchaser of a registered security for false or misleading information in a registration statement. In *Herman & MacLean v. Huddleston*, 459 U.S. at 384, 103 S.Ct. at 688, the Supreme Court noted that the lower courts had routinely allowed a plaintiff to proceed under § 10(b) even where express remedies under § 11 or other sections were available, and concluded that by leaving § 10(b) intact, Congress had impliedly ratified the cumulative nature of the § 10(b) action. The § 11 action is subject to a one-year/three-year period of limitations, which reinforces our view that the 1934 Act's one-year/three-year period is the appropriate analogue for actions under § 10(b).

Sections 14(d) and 14(e) of the 1934 Act, which focus on tender offers and communications in connection with such offers, are similarly provisions designed to ensure that security holders receive full disclosure. *See, e.g., Piper v. Chris–Craft Industries*, 430 U.S. at 22–24, 97 S.Ct. at 939–41. Section 14(d) requires a person who makes a tender offer for any class of registered

securities, if consummation of the offer would make him the beneficial owner of more than five percent of the class, to file with the SEC, concurrently with the first communication of the offer, information concerning his background and identity, the extent of his holdings in the target corporation, and his plans with respect to the target's business or structure. *See* 15 U.S.C. § 78n(d) and SEC Rule 14d–1 thereunder, 17 C.F.R. § 240.14d–1 et seq. (1990). Section 14(e) provides that in connection with a tender offer

> [i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices. . . .

15 U.S.C. § 78n(e). These provisions substantially overlap §§ 9 and 18(a) and Rule 10b–5. Thus, a claim that an offeror, in violation of § 14(d), failed to make material disclosures by failing to file a Schedule 14D–1 statement with the SEC could be pursued under § 14(e), § 9(e), or Rule 10b–5. A claim that an offeror made a false and misleading statement in a Schedule 14D–1 statement or any other tender-related document filed with the SEC could be pursued under § 14(e), § 9(e), § 18(a), or Rule 10b–5.

In our view, since Congress has provided in §§ 9(e) and 18(a) express rights of action that so substantially overlap the rights of action implied under §§ 10(b) and 14, and has provided a limitations period with respect to those express rights, the specified period provides a far more appropriate analogy than do state statutes devoted to different types of claims.

The only section of the 1934 Act under which Congress has granted a private action governed by a different limitations period is § 16(b), for which a two-year period is provided. Section 16(b) complements §§ 9, 10(b), and 18(a) but takes a different approach, since it is not a disclosure section. Section 16(b) requires corporate "in-

siders" whose positions give them access to information not available to the public to disgorge any profits made on "short-swing" transactions, *i.e.*, purchases and sales within a six-month period, in the corporation's securities. No proof is required of any misleading representation or omission, or of any statement at all; indeed, not even the most complete disclosure is a defense against recovery of short-swing profits. This section requires disgorgement "without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information." *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595, 93 S.Ct. 1736, 1745, 36 L.Ed.2d 503 (1973). No proof is required that the plaintiff, who may be either the corporation or one of its shareholders, bought or sold securities, or indeed took any action whatever in reliance on the defendant's actions or transactions. Any recovery goes to the corporation, *see* 15 U.S.C. § 78p(b), and the liability imposed by § 16(b) is virtually absolute, *see, e.g., Texas International Airlines v. National Airlines, Inc.*, 714 F.2d 533, 538 (5th Cir. 1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 721 (1984); SEC Exchange Act Release No. 26333, [1988–89 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 84,343, at 89,599 (Dec. 2, 1988) ("Section 16 is a strict liability provision under which an insider's short-swing profits can be recovered regardless of whether that insider actually was in possession of material, nonpublic information."). We conclude that § 16(b) is dissimilar to §§ 10(b), 14(d), and 14(e), and Rule 10b–5, and hence borrowing its two-year limitations period for those claims would be less appropriate than borrowing the one-year/three-year limitations period provided for claims under §§ 9 and 18(a).

Ceres and the SEC contend that §§ 10(b) and 14 are less analogous to §§ 9 and 18 than to § 20A of the Insider Trading Act, which creates a private right of action and provides a five-year limitations period, and they argue that we should borrow that five-year period. We disagree. Section 20A focuses only on insider trading. It provides that "[a]ny person who violates

any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable" to any contemporaneous seller or buyer, 15 U.S.C. § 78t–1(a). This section has no relationship to any of the many other types of claims that can be maintained under §§ 10(b) and 14. Section 20A was one of "a variety of measures designed to provide greater deterrence, detection and punishment of violations of insider trading." H.Rep. No. 100–910, 100th Cong., 2d Sess. 1988, at 7, *reprinted in* 1988 U.S.Code Cong. & Admin.News 6043, at 6044. These measures were needed because of the difficulties of ferreting out evidence sufficient to prosecute insider trading cases. *See id.* at 15, *reprinted in* 1988 U.S.Code Cong. & Admin.News at 6052. Though Congress perhaps specified a five-year limitations period in the ITA in recognition of these difficulties, there is no indication that it intended that this period be applied to other types of § 10(b) or § 14 actions. Section 20A states only that the five-year period applies to actions "brought under this section." 15 U.S.C. § 78t–1(b)(4). The ITA also contains a number of other special devices designed to help gain the evidence necessary for prosecution of insider trading cases, including authority for the SEC to award an informant a bounty of up to 10% of all sums recovered as a penalty or in settlement, *see* 15 U.S.C. § 78u–1(e); H.Rep. No. 100–910, 100th Cong., 2d Sess. 1988, at 22–23, *reprinted in* 1988 U.S.Code Cong. & Admin.News, at 6059–60. Plainly Congress felt that unique measures were necessary to curb insider trading, and we are not persuaded that the five-year limitations period specified for that type of action, which has not been designated for any other type of securities claim, was one that Congress meant to apply generally.

Ceres and the SEC also argue that the one-year/three-year period should not be adopted because it is substantially shorter than most state limitary periods traditionally applied, *e.g.,* New York's provision for two years from the date of discovery or six years from the violation, whichever is longer, N.Y. CPLR §§ 203(f) and 213. As an empirical matter, however, it appears that a one-year/three-year statute of limitations is in fact not shorter than most state limitary periods heretofore applied. According to the *ABA Task Force Report,* of 38 state statutes of limitations applied by federal courts in § 10(b) actions at the time of the survey, all but seven applied periods of three years or less. *See ABA Task Force Report,* 41 Bus.Law. at 662–66. Further, we think the history of the 1933 and 1934 Acts strongly suggests that Congress, if it had provided an express right of action under §§ 10(b) and 14, would have adopted a one-year/three-year period. Though the original bill proposing the 1934 Act contained a two-year limitations period, Congress decided instead, for claims under sections other than 16(b), on the one-year/three-year period. As explained by Senator Fletcher, chairman of the committee that drafted the Senate version of the bill, floor manager of the measure in the Senate, and a member of the House–Senate Conference Committee:

> [T]he thought was that a man ought not to delay suit more than 1 year after he discovers the fraud. If he has been injured and finds that he has been injured, he ought to bring his action within a reasonable time, and we fix that time at 1 year.

78 Cong Rec. 8198 (May 7, 1934); *see also id.* at 8200–01 (May 7, 1934) (remarks of Senator Barkley, also a member of the House–Senate Conference Committee: if a person discovers the fraud promptly, "it does seem that he ought not to be allowed to let the whole period of the limitation run.... I think we have to consider this proposed statute of limitations in a little different light from that in which we consider ordinary statutes of limitations."). And though the 1933 Act originally provided for a two-year/ten-year limitations period, Congress cut this period when it passed the 1934 Act, enacting an amendment to the 1933 Act to provide the same one-year/three-year period for all private actions under the latter. We see no basis for concluding that a one-year/three-year period with regard to claims under §§ 10(b) and 14 and Rule 10b–5 is not what Congress would have chosen.

In sum, we conclude that the statute of limitations provided in the 1934 Act for express rights of action under §§ 9(e) and 18(a) of that Act clearly provides a closer analogy than do available state statutes, and that both the federal policies underlying the federal securities laws and the practicalities of litigation make borrowing of the 1934 Act's one-year/three-year period significantly more appropriate. Applying this federal period of limitations, we affirm the district court's dismissal of Ceres's complaint.

Since with the application of this federal limitary period the outcome of the present case is the same as it would have been through application of New York law in accordance with our prior precedents, we may leave for the future all questions concerning retroactive application of our ruling that claims such as those asserted here are to be governed by the one-year/three-year statute of limitations. This opinion has been circulated to all of the active members of this Court.

## CONCLUSION

We have considered all of Ceres's arguments on this appeal and have found them to be without merit. The order of the district court dismissing the complaint is affirmed.