Stanley E. HIRSCHFELD and Dorothy Hirschfeld, Plaintiffs,

v.

TOTAL HEALTH SYSTEMS, INC. and Jay A. Fabrikant, Defendants.

No. CV 90–3544 (ADS).

United States District Court, E.D. New York.

Oct. 9, 1991.

David F. Cavers, Jr., P.C. by David F. Cavers, Boston, Mass., for plaintiffs.

Calinoff & Katz (Thomas A. Martin, of counsel), New York City, for defendants.

## OPINION AND ORDER

SPATT, District Judge.

In this action, the plaintiffs allege securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j [1988]), and Rule 10b–5 of the Securities Exchange Commission. The defendants Total Health Systems, Inc. and Jay A. Fabrikant now move to dismiss the Complaint, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil procedure, on two grounds: (1) statute of limitations; and (2) failure to state a claim upon which relief can be granted. For the reasons set forth below, the defendants' motion is granted.

## BACKGROUND

1. *The Parties*

The plaintiffs Stanley Hirschfeld and Dorothy Hirschfeld are husband and wife and reside in Indiana. The defendant Total Health Systems, Inc. ("THS") is a New York corporation which operates various Health Maintenance Organizations ("HMOs") and has its principal place of business in Great Neck, New York. The defendant Jay Fabrikant, a New York resident, was chairman of the board of directors of THS as well as treasurer, chief operating officer, and 10% shareholder in the corporation.

It is undisputed that on May 15, 1987, plaintiff Stanley Hirschfeld purchased 5500 shares of common stock of THS at 16¼ and

that he purchased an additional 20,000 shares at approximately the same price on May 19, 1987. Stanley Hirschfeld was being advised in these securities transactions by Thomas Cullen of Rothschild and Company in Chicago, Illinois. Cullen had received favorable information concerning THS from a stockbroker colleague. The amended complaint alleges that Cullen was told of "significant favorable developments at [THS], including a major pending acquisition, predicted earnings in excess of $1.00 per share and significant expec[t]ed increases in the HMO enrollment of [THS]" (*see* Amended Complaint ¶ 13).

According to the complaint, THS and Jay Fabrikant, along with a company called Copeland Securities Incorporated ("Copeland") and an individual named Kenneth W. Germain ("Germain"), "developed and undertook a plan to promote the stock of [THS] to the investment community by providing false and misleading information concerning [THS]'s business and financial condition and thereby increase the market price of [THS]'s stock" (¶ 8). The complaint also alleges that THS and Fabrikant "aided and abetted" Copeland and Germain (¶ 9).

## 2. *The Allegations*

According to the complaint, Thomas Cullen relied on the "Copeland Report," an investment publication, dated May 15, 1987, in recommending to the plaintiffs that they purchase shares of THS. The Copeland Report represented that THS would have:

"a. Gross revenues for 1987 of $118,-000,000 (it was not stated whether 1987 was the calendar year or [THS]'s fiscal year for 1987 ending June 30, 1987);

b. Earnings of $1.15/share for 1987 or approximately $4,600,000;

c. 104,000 commercial members and 38,-000 Medicare members for 1987 (the Copeland Report stated that [THS] currently had 7,000 members and a potential acquisition, CoMed, Inc. a non-profit HMO in New Jersey, had 60,000 members)" (Amended Complaint ¶ 10).

The amended complaint contains one cause of action under Section 10(b) of the Securities Exchange Act and S.E.C. Rule 10b–5. Subject matter jurisdiction is based on 15 U.S.C. § 78aa ("The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder").

The relevant allegations stated in the amended complaint are as follows:

"11. [THS] and its then chief executive officer, Fabrikant, among other representatives, and Copeland and its then chief executive officer, Germain, among other representatives, knew that the information set forth in the Copeland Report was false and misleading in the following aspects, among others:

a. Gross revenues were grossly exaggerated. Gross premium revenues for the three months ending March 31, 1987, were $307,512. For the fiscal year ending June 30, 1987, or 45 days after issuance of the Copeland Report, gross premium revenues were $828,000;

b. Net earnings before tax were grossly misleading. Net losses for the fiscal year ending June 30, 1987, or 45 days after issuance of the Copeland Report, were $8,600,000 of which $3,000,000 was non-recurring (including $2,035,000 of compensation to the officers and directors in the form of issuance of [THS] shares to them at prices substantially below market sale). No reference was made in the Copeland Report to the statement made by [THS] in a prospectus dated March 18, 1987, that [THS] 'anticipates that it will continue to sustain operating losses for at least one year from the date hereof' or March, 1988.

c. Existing enrollment figures were misstated and enrollment predictions were without basis in fact. Enrollment as of the May 15, 1987 date of the Copeland Report was approximately 3,500 members, not 7,000 members as represented. As of the date of the Copeland Report, [THS] had not qualified under federal regulations for Medicare mem-

bers. Even if the CoMed acquisition was consummated, enrollment for 1987 would have been substantially less than predicted....

19. [THS] and Fabrikant knowingly aided and abetted Copeland and Germain and other Copeland representatives including Anthony Correra, in the violation of section § 10b of the Securities Exchange Act of 1934, 15 U.S.C. 78j, and Rule 10b–5 promulgated thereunder, by knowingly making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading, by the use of means or instrumentalities of interstate commerce or of the mails. In particular [THS] and Fabrikant knowingly provided Anthony J. Correra, on or before May 15, 1987, untrue and misleading information on the business and financial condition of [THS]. [THS] and Fabrikant knew that Mr. Correra's purpose in gathering such information was to prepare a report on [THS] to be issued through Copeland to the securities industry and potential investors of [THS] to further [THS] and Fabrikant's plan in concert with Copeland and Germain to induce purchases of [THS]'s common stock and thereby increase its price."

As a result of the defendants' violations, counsel for the plaintiffs contends, the Hirschfelds were damaged in "an amount not less than $222,323 plus pre-judgment interest computed at market rate" (Amended Complaint ¶ 20).

## PROCEDURAL SETTING

In moving to dismiss the complaint under Rule 12(b)(6), the defendants claim that the plaintiffs have failed to state a cause of action upon which relief can be granted. According to the defendants, the sole cause of action enunciated in the complaint is barred by the applicable statute of limitations. In addition, the defendants maintain that the complaint fails to plead fraud with the particularity required by Rule 9(b).

As noted, the plaintiffs purchased the THS stock in May, 1987. In mid-July, Mr. Cullen advised them to "lighten up" their holdings of THS, whereupon Mr. Hirschfeld sold 7,000 shares in two transactions on July 14 and 17, 1987 (Amended Complaint ¶ 16). When the market price of THS stock drastically declined in Fall 1987, the plaintiffs sold their remaining shares. According to the amended complaint, "Hirschfeld caused the sale of his and his wife's [THS] stock in September and October 1987, solely as a result of the substantial decline in the market price" (¶ 18).

The last sale took place on October 15, 1987 (¶ 17). The plaintiffs then requested financial reports, including SEC information, on November 30, 1987. The time frame is significant because the plaintiffs allege that:

"[t]he first time that Mr. Hirschfeld can recall being suspicious of fraudulent activity by [THS] or Fabrikant or Copeland or Germain was in mid–1988 when Mr. Lambergs told him by telephone that there may have been intentional misrepresentations made in connection with the sale of [THS]'s stock in May, 1987. Also, Mr. Hirschfeld received a copy of [THS]'s 10K filing with the SEC dated May 11, 1988, which covered the calendar year 1987" (¶ 18).

In support of their motion to dismiss the complaint, the defendants claim that the complaint does not indicate when the plaintiffs discovered the purported misstatements, "nor have they even alluded to any good faith effort on their part to discover such misstatements" (Defendant's Memorandum of Law at p. 4).

Looking to the date of the plaintiff's last sale of THS stock, the defendants maintain that

"... since their economic loss was suffered as of October 15, 1987, this Court can reasonably assume that they discovered the purported misstatements or should have discovered the misstatements at that time. This lawsuit was not instituted until October of 1990, over three years from the date of the Hirschfelds original purchase of THS stock and

well over one year from the time they should have learned of the purported misstatements" (*id.* at p. 4).

Consequently, the defendants aver that the statute of limitations is a viable defense. In particular, the defendants rely upon the holding in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990) and contend that the Second Circuit's determination in that case should be applied retroactively to bar the plaintiff's claim.

Conversely, the plaintiffs rely upon the Second Circuit's subsequent holding in *Welch v. Cadre Capital* 923 F.2d 989 (2d Cir.1991) wherein the court determined that the holding in *Ceres* would not have retroactive application. Further, the plaintiffs argue that this Court should apply the traditional rule for determining the retroactive application of a judicial decision as enunciated by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). Significantly, the plaintiffs agree that their claim is barred under the three year limitations period adopted by the court in *Ceres* if that limitations rule is applied retroactively (Plaintiff's Memorandum in Opposition at p. 1).

## DISCUSSION

### A. *The Statute of Limitations*

◼ The Second Circuit recently clarified the appropriate statute of limitations for Section 10(b) and Rule 10b–5 claims to be one year after discovery of the conduct alleged to constitute the violation but no more than three years after the occurrence of such conduct (*Ceres Partners v. GEL Associates, supra,* at pp. 359–61). The plaintiffs argue that since the complaint was filed on October 15, 1990, and *Ceres* was decided on November 8, 1990, the rule pre-dating *Ceres* should apply to this action.

◼ At the time the instant motion was filed, under the law in the Second Circuit, the statute of limitations may not have been a bar to this action. Applying the "borrowing statute," New York C.P.L.R. § 202 provides that the New York court must look to the place where the cause of action accrued to determine the appropriate statute of limitations. The Second Circuit has construed this statutory provision to mean that the cause of action accrues where its economic impact is felt, normally the plaintiff's residence (*Ceres Partners v. GEL Associates, supra,* at p. 353, *citing Arneil v. Ramsey,* 550 F.2d 774, 779 [2d Cir.1977]). The plaintiffs reside in Indiana and placed the calls to purchase the subject securities from their residence in Indiana. Therefore, the economic injury occurred in that State.

As the *Ceres* court noted, "if a suit brought in the 'place of plaintiff's residence would be time-barred, the suit in a New York federal court is time-barred' " (*id.*). Under Indiana law, a securities fraud action must be commenced within three years "after discovery by the person bringing the action of a violation of this chapter" (*see* IND.CODE ANN. § 23–2–1–19[g] ). In the instant case, there is a factual dispute as to when the discovery of the fraud took place. If the discovery occurred on October 15, 1987 or thereafter, the action would not be barred under Indiana law.

However, the Court is also cognizant of the fact that if this suit were brought in Federal District Court in Indiana, the Seventh Circuit would apply the law it set forth in (*Short v. Belleville Shoe Manufacturing Company,* 908 F.2d 1385 [7th Cir. 1990] ). The Seventh Circuit decided *Short* in July, 1990, three months before the Hirschfelds filed their complaint. In *Short,* the court held that the one year/ three year period of limitations drawn from other sections of the Securities Exchange Act of 1934 should apply—a position adopted shortly thereafter by the Second Circuit in the *Ceres* case. Under the *Short* decision, the plaintiffs' action would be time-barred.

The plaintiffs rely on the Second Circuit's holding in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991), wherein the court declined to apply the rule of *Ceres* retroactively. However, the Supreme Court granted a petition for writ of certiorari in the *Welch* case, and on June 28,

1991, the Court vacated the judgment and remanded the case to the Second Circuit for further consideration in light of *James B. Beam Distilling Company v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) and *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (*Welch v. Cadre Capital,* 923 F.2d 989 [2d Cir.1991], *vacated and remanded sub nom. Northwest Savings Bank, PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 [1991]). The impact of these two recent Supreme Court decisions upon the instant motion is discussed below.

■ The accrual date of an action for statute of limitations purposes in a securities fraud case is determined by federal law, and is an objective standard which "begins to run when a person of ordinary intelligence would have suspected that he or she was being defrauded." (*Farley v. Baird, Patrick & Co., Inc.,* 750 F.Supp. 1209, 1213 [S.D.N.Y.1990] [relying on *Stull v. Bayard,* 561 F.2d 429, 432 [2d Cir.1977], *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 [1978]] ).

According to the complaint, the alleged misrepresentations occurred "on or before May 15, 1987" (¶ 17). The plaintiffs first bought THS stock on May 15, 1987, and also made purchases on May 19, 1987 (¶ 14). They sold shares on July 14, 1987, on the advice of Mr. Cullen to "lighten up" their holdings of THS (¶ 16). By October 15, 1987, the Hirschfelds had sold all of their remaining shares. Applying the rule of *Ceres,* it is clear that the conduct giving rise to the claim—the purchase of THS common stock—took place between May 15 and May 19, 1987, more than three years prior to the filing of the complaint on October 15, 1990. On that basis, if the *Ceres* rule is applied retroactively, the action is time-barred and it is unnecessary to resolve the parties' dispute over the actual date of discovery of the fraud.

### B. *Recent Supreme Court Decisions*

While this action was pending, the Supreme Court reviewed the question of whether a uniform federal limitations period for § 10(b) and Rule 10b–5 claims should be adopted and if the one year/three year period outlined in *Ceres Partners v. GEL Associates,* 918 F.2d 349, 359–61 (2d Cir.1990) should be followed.

### (i) The *Lampf* Case

■ The Supreme Court has now determined that litigation instituted pursuant to § 10(b) and Rule 10b–5 must be commenced within one year after the discovery of the facts constituting the violation and, in any event, within three years after such violation, as provided in the 1934 Act and the Securities Act of 1933 (*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 2775, 115 L.Ed.2d 321 [1991]).

In reviewing the historical approach to statutes of limitations, the Supreme Court noted that

> "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand. *Wilson v. Garcia,* 471 U.S. 261, 266–267, 105 S.Ct. 1938, 1941–1942, 85 L.Ed.2d 254 (1985); *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704 [86 S.Ct. 1107, 1112, 16 L.Ed.2d 192] (1966); *Campbell v. Haverhill,* 155 U.S. 610, 617, 15 S.Ct. 217, 220, 39 L.Ed. 280 (1895)" (*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, supra,* [—— U.S. at ——, 111 S.Ct.] at p. 2778).

However, the Court also determined that when the operation of a state limitations period would frustrate policies embraced by a federal enactment, the Court will look to federal law for a suitable limitations period (*id.* —— U.S. at ——, 111 S.Ct. at p. 2778).

Although the Court explained that the "state borrowing doctrine" was not to be lightly abandoned, it recognized that the case before it was "complicated by the nontraditional origins of the § 10(b) cause of action" (*id.* —— U.S. at —— –——, 111 S.Ct. at pp. 2778–2779). Consequently, the Court held that the proper statute of limita-

tions to be applied to a claim under § 10(b) of the Securities Exchange Act is the analogous one-and-three-year limitations and repose structure provided for other causes of action under the Securities Exchange Act and Securities Act (*id.* —— U.S. ——, ——, 111 S.Ct. at pp. 2775, 2781).

#### (ii) *James B. Beam Distilling Company v. Georgia*

The remaining issue then is whether *Lampf* is to be applied retroactively. Although the decision does not explicitly mention retroactive application, it is clear from the language of the concluding section of the majority opinion, as well as from Justice Sandra Day O'Connor's dissent, that the decision was being applied retroactively to the litigants in *Lampf.* It is not coincidental that the *Lampf* case and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991) were handed down the same day, nor that both decisions make clear the present Supreme Court's preference for retroactive application of a new rule of law.

When a court is asked to address a challenge to a particular rule's retroactive application, it begins with the assumption that "the rule of law in force at the time a decision is rendered is the law to be applied" (*Lund v. Shearson/Lehman/American Exp., Inc.,* 852 F.2d 182, 183 [6th Cir.1988]). The Supreme Court has stated that this practice is "overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their current understanding of the law" (*James B. Beam Distilling Co. v. Georgia, supra,* —— U.S. ——, 111 S.Ct. at p. 2443).

Until recently, most courts have applied the three-factor test set out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349 (1971):

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed ... Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further retard its operation' ... Finally, we have weighed the inequity imposed by retroactive application for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our case for avoiding the "injustice or hardship" by a holding of non retroactivity'" *Id.* at pp. 106–107 [92 S.Ct. at 355–56] [citation omitted].

In the *Chevron Oil* case, the Court held that the Louisiana one-year statute of limitations in a personal injury case should not be applied retroactively because the case was one of first impression (concerning the Lands Act), which, in effect, overruled a long line of decisions by the Court of Appeals for the Fifth Circuit. *Id.* at p. 107, 92 S.Ct. at 355–56. *Chevron Oil* made it clear that that there were circumstances in which it would be appropriate to apply a decision in a completely prospective manner.

In accordance with the *Chevron Oil* decision, it has generally been held that the "new pronouncement of a legal principle must be a 'clear break' from past precedent or with what is recognized as settled authority" (*Lund, supra,* 852 F.2d at 183), otherwise, the rule will automatically be applied retrospectively (*United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 [1982]).

The Supreme Court narrowed the *Chevron Oil* test in *James B. Beam Distilling Co. v. Georgia, supra,* (O'Connor, J., dissenting). In the *Beam Distilling* case, a strongly divided Court ruled 6–3, with three concurring opinions, that its ruling in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), should apply retroactively to claims arising on facts antedating that decision (*id.* —— U.S. at ——, 111 S.Ct. at 2441).

In *Bacchus,* the Court held that a Hawaii law which imposed an excise tax on import-

ed liquor at a higher rate than that imposed on liquor manufactured from home-grown products violated the Commerce Clause (*Bacchus Imports, Ltd. v. Dias, supra*). Georgia had a similar law which the petitioner in *Beam Distilling* sought to have declared unconstitutional. The petitioner was seeking a refund of taxes it had paid under Georgia's law for the preceding three years (*James B. Beam Distilling Co. v. Georgia, supra,* — U.S. at —, 111 S.Ct. at p. 2442). The state court declared the statute unconstitutional but refused to apply its ruling retroactively based on the *Chevron Oil* test. The Supreme Court reversed and remanded the case, stating that "retroactivity is properly seen in the first instance as a matter of choice of law, 'a choice ... between the principle of forward operation and that of relation backward.'" (*James B. Beam Distilling v. Georgia, supra, quoting Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 [1932]).

In writing for the majority, Justice Souter, joined by Justice Stevens, discussed retroactivity in the context of choice of law and outlined three ways in which the choice of law problem may be resolved:

"First, a decision may be made *fully retroactive,* applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations. This practice is overwhelmingly the norm

... and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law ... Second, there is the *purely prospective* method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision.... This Court has, albeit infrequently, resorted to pure prospectivity, see *Chevron Oil Co. v. Huson,* 404 U.S. 97 [92 S.Ct. 349] (1971); ...

Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement. This method, which we may call *modified* or *selective, prospectivity,* enjoyed its temporary ascendancy in the criminal law during a period in which the Court formulated new rules, prophylactic or otherwise, to insure protection of the rights of the accused." *Id.* [— U.S. at —, 111 S.Ct.] at 2443–2444 [citation omitted; emphasis supplied].

Comparing the criminal context, Justice Souter went on to comment that the Court "abandoned the possibility of selective prospectivity" in *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), "even where the new rule constituted a 'clear break' with previous law" (*id.*). Though the issue of retroactivity in the civil area was not disposed of in *Griffith,* Justice Souter notes that "selective prospectivity appears never to have been endorsed in the civil context "(*James B. Beam Distilling v. Georgia, supra, citing American Trucking Associations Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 [1990]).

In the case of the Georgia statute, the Supreme Court held that it was error to refuse to apply a rule of federal law retroactively after the case announcing the rule had already done so (*id.*). The Court noted that

"[b]ecause the *Bacchus* opinion did not reserve the question whether its holding should be applied to the parties before it ... it is properly understood to have followed the normal rule of retroactive application in civil cases.... *Bacchus* thus applied its own rule, just as if it had reversed and remanded without further ado, and yet of course the Georgia courts refused to apply that rule with respect to the litigants in this case" (*id.*).

In finding that the Georgia courts were in error, the Supreme Court maintained that principles of equality and *stare decisis* prevailed over any claim based on a *Chevron Oil* analysis.

Referring again to *Griffith v. Kentucky, supra,* the Court found that *"Griffith* cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context" (*id.*). In effect, the Court in *Beam Distilling* has substantially limited the third prong of the *Chevron Oil* test:

"Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case" (*id.* [—— U.S. at ——, 111 S.Ct.] at p. 2447 [citation omitted]).

However, the Court did note that it was not speculating as to the "bounds or propriety of pure prospectivity" (*id.* —— U.S. at ——, 111 S.Ct. at p. 2448).

In a lengthy dissent, joined by Justices Rehnquist and Kennedy, Justice Sandra Day O'Connor criticized the majority for discarding the *Chevron Oil* analysis (*id.* —— U.S. at ——, 111 S.Ct. at p. 2451). According to Justice O'Connor, to hold that all decisions must be applied retroactively in all cases "ignores a well-settled precedent in which this Court has refused repeatedly to apply new rules retroactively in civil cases" (*James B. Beam Distilling Co. v. Georgia, supra,* —— U.S. at ——, 111 S.Ct. at 2451). In concluding that nonretroactivity was the correct choice in this case, Justice O'Connor stated that "a proper application of the *Chevron Oil* test" to the *Beam Distilling* case would clearly have established that the *Bacchus* rule "should not be applied retroactively" because it established a new principle of law (*id.* —— U.S. at ——, 111 S.Ct. at p. 2453).

Justice O'Connor dissented as well in the *Lampf* case, another 5–4 decision, again objecting to the majority's failure to consider the *Chevron Oil* criteria in determining whether to apply the new rule retroactively. In maintaining that the *Lampf* case is "indistinguishable from *Chevron Oil* and retroactive application should be denied,"—a significant factor in the context of the instant case—Justice O'Connor stated:

"In holding that respondent's suit is time-barred under a limitations period that did not exist before today, the Court departs drastically from our established practice and inflicts an injustice on the respondents. The Court declines to explain its unprecedented decision, or even to acknowledge its unusual character" (*id.* [—— U.S. at ——, ——, 111 S.Ct.] at pp. 2785, 2787).

These two Supreme Court decisions have been applied in a flurry of subsequent § 10(b) cases resulting in the dismissal of claims as being time-barred (*see, e.g., Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497 [8th Cir.1991]; *Dimplex v. Scovill, Inc.,* No. 88 Civ. 7983, 1991 WL 168041, at *6 [S.D.N.Y. August 22, 1991]; *Haggerty v. Comstock Gold Company, L.P.,* 770 F.Supp. 216, 218 [S.D.N.Y.1991]; *Duke v. Touche Ross & Co.,* No. 90 Civ. 5610, 1991 WL 137493 [S.D.N.Y. July 24, 1991]; *Barr v. McGraw–Hill,* 770 F.Supp. 855, 860 [S.D.N.Y.1991]; *Klein v. Goetzmann,* 770 F.Supp. 78 [N.D.N.Y.1991]).

The plaintiffs in the instant case have conceded that if *Ceres* is found to be applicable retroactively, their securities fraud claim would be barred by the statute of limitations. Accordingly, because the plaintiffs' federal securities fraud claim was not filed within the one year/three year period, it must be dismissed on the ground of untimeliness.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is granted. In light of the dismissal, it is unnecessary for the Court to address the defendants' motion to dismiss for failure to plead fraud with the requisite particularity.

SO ORDERED.