### Elizabeth A. LEACH and Medical Benefits Management Services, Inc.

v.

### QUALITY HEALTH SERVICES, INC., LifeQuest, Inc., OccuMed Resources, American Health Resources Systems, Inc. and Roger B. Hiser

and

### LIFEQUEST, INC.

v.

### Robert M. SCHERZER.

### Civ. A. No. 94–4346.

United States District Court, E.D. Pennsylvania.

Oct. 3, 1995.

Reginald A. Krasney, Wayne, PA, for Elizabeth A. Leach, and Medical Benefits Management Services, Inc.

Tracy Canuso Nugent, Daller, Greenberg and Dietrich, Ft. Washington, PA, Albert A. Ciardi, III, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for LifeQuest, Inc.

Morton F. Daller, Daller Greenberg & Dietrich, Fort Washington, PA, Albert A. Ciardi, III, Ciardi, Maschmeyer & Karalis,

Philadelphia, PA, for OccuMed Resources and Roger B. Hiser.

Sarah M. Solmssen, Malvern, PA, Neil J. Hamburg, Philadelphia, PA, for Robert M. Scherzer.

Albert A. Ciardi, Jr., Ciardi, Maschmeyer and Karalis, P.C., Philadelphia, PA, for Ciardi, Maschmeyer & Karalis, P.C. and American Health Resource Systems, Inc.

## MEMORANDUM

JOYNER, District Judge.

Currently before this Court are four motions for summary judgment. Plaintiffs in this action are Elizabeth Leach and her wholly-owned company, Medical Benefits Management Services, Inc. (MBMSI). Defendants are an individual, Roger Hiser, and four companies, Quality Health Services, Inc., American Health Resources Systems, Inc. (AHRS), LifeQuest, Inc. and OccuMed Resources.

Plaintiffs' litigation arises out of two breached contracts between MBMSI, Leach and Quality Health. The first is an Employment Agreement, whereby Leach agreed to work for Quality Health. The second is an Asset Sale Agreement whereby Plaintiffs agreed to sell all of MBMSI's assets to Quality Health in exchange for installment payments of cash and stock in Quality Health. The Amended Complaint alleges that both Agreements have been breached. The Amended Complaint also alleges that as inducement for Plaintiffs to enter into the Agreements, Quality Health and Hiser, its officer, director and controlling shareholder, made several misrepresentations of material fact upon which Plaintiffs relied.

In addition to Plaintiffs' Complaint, Defendant AHRS has counter-sued Plaintiffs for the money they did receive under the Agreements. Also, LifeQuest has brought a third-party Complaint against Robert Scherzer. Scherzer was Quality Health's President and CEO until mid–1992 and negotiated the terms of the Agreements with Plaintiffs. In 1992, Scherzer left Quality Health and filed a suit against it and Hiser for breach of contract. Plaintiffs' original Complaint named

Scherzer as a Defendant. However, Plaintiffs and Scherzer settled their differences and Plaintiffs' Amended Complaint does not include allegations against Scherzer.

Plaintiffs' Amended Complaint brings claims against all defendants but OccuMed under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk (1981). The Amended Complaint brings state claims against all Defendants for breach of contract, unpaid wages, fraudulent conveyance, fraud and misrepresentation.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). A plaintiff must provide more than a "mere scintilla" of evidence to rebut the defendant's evidence. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12.

## DISCUSSION

Plaintiffs' primary causes of action lie under § 10(b) of the Securities Exchange Act of 1934. This section makes it unlawful for any person to "use or employ" any "manipulative or deceptive device or contrivance" in "the purchase or sale of any [registered] security." 15 U.S.C. § 78j(b). A manipulative or deceptive device or contrivance is defined in part in Rule 10(b)(5) as "any untrue statement of a material fact."

■ Defendants argue that Plaintiffs' claims are time-barred under the one-year statute of limitations for actions brought under § 10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991).[1] The Supreme Court has held that the "1-year period, by its terms, begins after discovery of the facts constituting the violation." *Id.*

■ The starting date of the one-year period is determined by asking whether "plaintiffs [had] sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." *Gruber v. Price Waterhouse*, 697 F.Supp. 859, 864 (E.D.Pa.1988), *aff'd*, 911 F.2d 960 (3d Cir.1990). At that point, "plaintiffs have a duty to exercise reasonable diligence to uncover the basis for their claims and are held to have constructive notice of all facts that could have been learned through diligent investigation during the limitation period." *Id.* In other words, inquiry notice starts to run when " 'a person of ordinary intelligence would have suspected that he or she was being defrauded.' " *Hirschfeld v. Total Health Sys.*, 775 F.Supp. 574, 578 (E.D.N.Y.1991), *aff'd*. 978 F.2d 706 (2d Cir. 1992) (quoting *Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1213 (S.D.N.Y.1990)).

The evidence proffered by the parties on the issue of when Plaintiffs had notice of their claims consists of (1) a Memorandum authored by Leach in October, 1992, (2) a letter written on Plaintiffs' behalf by their attorney to Hiser on July 14, 1993, (3) Leach's deposition testimony and (4) several of Plaintiffs' briefs that have been verified by Leach.

---

1. In addition, the action must have accrued within three years of filing the complaint. Together, this is known as the 1–and–3 rule. *Lampf*, 501 U.S. at 363, 111 S.Ct. at 2782. The only question here is whether this action was brought within one year of discovering the fraud.

According to Plaintiffs, the first piece of evidence, the October, 1992 Memorandum, was created in the following circumstances. Scherzer had left Quality Health and was suing it and Hiser. Hiser told Leach that he was going to counter-sue Scherzer because Scherzer had made many misstatements to Hiser. Hiser told Leach what those misstatements were and asked her to prepare a memo describing her negotiations with Scherzer over the Agreements, to address the misstatements and detail what damages she would suffer if Quality Health failed as a result of Scherzer's misstatements. Hiser assured Leach, however, that Quality Health would not fail because it was going to receive venture capital money.

In response to this request, Leach wrote the October, 1992 Memorandum and titled it "Summary of Interaction: Leach & Scherzer." The first section is called "Overview" and describes the negotiations of the Agreements. The second section is called "Deceptive Business Practices." This section lists several representations Scherzer made that Hiser told her were untrue. The final section of the memo is titled "Damages." Notably, the items in the Deceptive Business Practices section and the Damages section are identical to items listed in the Amended Complaint.

The second piece of evidence proffered is a collection letter Plaintiffs' attorney sent Hiser on July 14, 1993, a year and a day before the Complaint was filed. This letter sought the unpaid cash and stock under the Agreements. It states, "the potential issues that could surface in any collection litigation go beyond simply breach of contract and include securities fraud and potential personal liability for you and Robert Scherzer."

The third piece of evidence is Leach's deposition testimony and the fourth is averments made in several briefs that have been verified by Leach. Leach testified in her deposition that she only learned the facts underlying the Amended Complaint in September, 1993, when Quality Health delivered certain documents to Plaintiffs' attorney that he had requested. This averment is repeated in the verified briefs.

Defendants argue that the Memorandum and the letter demonstrate that Plaintiffs had actual notice of the facts underlying the alleged violations by July 14, 1993 at the latest. Because the Complaint was filed a year and a day after July 14, 1993, Defendants assert that Plaintiffs' securities claims are time-barred. Plaintiffs make several arguments why the Memorandum and letter do not demonstrate actual notice before July 14, 1993. At the very least, they argue, their evidence that they did not learn the facts until September, 1993 creates an issue of material fact for the jury.

First, Plaintiffs argue that the Memorandum shows that in October, 1992, they thought that Scherzer was responsible for the misstatements, not Hiser. Plaintiffs argue that inquiry notice is a two-part test. *Urland v. Merrell–Dow Pharms.*, 822 F.2d 1268 (3d Cir.1987) and *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988). They assert that for them to have had inquiry notice in October, 1992 they must have known of the injury as well as its cause or source. They argue that because Hiser blamed Scherzer for the misstatements, they did not know the source of the injury. Plaintiffs' argument is similar to the one made in *Wilson v. H.J. Wilson Co.*, 563 F.Supp. 10, 12 (M.D.La.1982). There, the plaintiff was informed that he owned fewer shares of stock than he had bought, but he denied "understanding" this information. Regardless, the Court held that the plaintiff had inquiry notice of the fraud when he received the information, and that his lawsuit, brought more than one year later, was time-barred. *Id.*

Our Plaintiffs' argument is equally unavailing. *Urland* actually states that "'once a plaintiff possesses the salient facts concerning the occurrence of his injury and *who* or *what* caused it, he has the ability to investigate and pursue his claim.'" *Id.* at 1275 (quoting *Berardi v. Johns–Manville Corp.*, 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984)) (emphasis in original). This analysis simply looks for notice of the causal connection between the violation and the injury, not the precise details of who orchestrated the violation. Here, according to Leach's October, 1992 Memorandum, Plain-

tiffs were made aware of the misstatements because Hiser told Leach exactly which of Scherzer's statements were false. The "Damages" portion of the Memorandum demonstrates that Plaintiffs had made the causal connection between the misstatements and the injury by that date as well. From this we determine that the *Urland* requirement is met.

■ Second, Plaintiffs argue that the July, 1993 letter simply refers to potential claims and is merely an attempt to exert leverage in a collection action. They point out that the letter does not refer to any specific federal securities law claim and so could apply to state securities law violations as easily as the violations alleged in this action. This argument is also unavailing. Plaintiffs' attorney certainly had enough facts about the underlying issues in this action by July 14, 1993 to determine that securities fraud was a potential issue. It is significant that the only threat he made concerned the area of law, securities fraud, that ultimately became the issue in this case. Plaintiffs' attorney did not threaten Hiser with charges of employment discrimination, or any other general area of law that could conceivably have been relevant in the breakup of the employment relation. The letter demonstrates that Plaintiffs had notice of the factual basis underlying the claim, the legal claims arising from those facts and had connected Hiser to those facts and that legal claim by July 14, 1993.

■ We turn now to apply the test laid out in *Gruber*. First, we ask whether Plaintiffs "had information of possible wrongdoing" more than a year before filing the Complaint. 697 F.Supp. at 864. According to Plaintiffs themselves, they had actual knowledge of wrongdoing in October, 1992 when Hiser told Leach of the misstatements, although he blamed Scherzer for them. Next, we ask whether reasonable diligence would have uncovered the basis for the claims. *Id.* Again, we find that based on Plaintiffs' own evidence, it would have. According to Plaintiffs, they learned of the wrongdoing as soon as they received the documents their lawyer requested from Quality Health. This demonstrates that timely, reasonable diligence

would have revealed the true facts within a year. Therefore, Plaintiffs are "held to have constructive notice of all facts that could have been learned through diligent investigation through the limitations period." *Id.*

■ This analysis is made in the context of a motion for summary judgment. For that reason, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. We must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. Plaintiffs' evidence consists solely of their assertion that they only learned the facts in September, 1993. If we view all the evidence in the light most favorable to Plaintiffs, we can infer that at no point before September, 1993 did they have actual notice of the actual violations that have been sued upon here. However, this "mere scintilla" does not controvert the overwhelming evidence that they had inquiry notice by July 14, 1993 at the latest. *Id.* at 251, 106 S.Ct. at 2511–12. We find that a reasonable jury would have no choice but to find that in this situation, " 'a person of ordinary intelligence would have suspected that he or she was being defrauded' " by July 14, 1993 at the latest. *Hirschfeld*, 775 F.Supp. at 578.

■■ Because of this finding, we grant summary judgment in Defendants' favor on Counts One, Two and Three, the federal securities law counts. Having granted summary judgment on the only federal claims in this action, we turn to the state law claims. We do not find that those claims should remain in federal court. 28 U.S.C. § 1367(c)(3). For this reason, we dismiss the remaining counts, Counts Four through Nine. The Counterclaim of AHRS and the Third–Party Complaint of LifeQuest likewise consist of state causes of action, and will be dismissed for the same reasons.[2]

An appropriate Order follows.

### ORDER

AND NOW, this 3rd day of October, 1995, upon consideration of:

---

**2.** Both Plaintiffs' Motion for Summary Judgment on the Counterclaim and Scherzer's Motion for

Summary Judgment on the Third–Party Complaint also sought the imposition of sanctions

1. Third Party Defendant Robert M. Scherzer's Motion for Summary Judgment and for Attorney's Fees and Sanctions pursuant to 28 U.S.C. § 1927 (document no. 43) and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART. The Motion is hereby GRANTED in that the Third–Party Complaint is hereby DISMISSED. The Motion is hereby DENIED in all other respects.

2. Upon consideration of Plaintiffs' Motion for Summary Judgment on the Counterclaim of Defendant American Health Resource Systems, Inc. and for Sanctions (document no. 48) and responses thereto, the Motion is hereby GRANTED in that the COUNTERCLAIM is hereby DISMISSED. The Motion is hereby DENIED in all other respects.

3. Upon consideration of the Motion for Summary Judgment of Defendants Life-Quest, Inc. and OccuMed Resources (document no. 49) and the Motion of Defendants Roger B. Hiser and American Health Resource Systems, Inc. for Summary Judgment (document no. 50) and responses thereto, the Motions are hereby GRANTED and Plaintiffs' Amended Complaint is hereby DISMISSED.

———

Robert A. Zauzmer, U.S. Attorney's Office, Philadelphia, PA, for Government.

Richard W. Berlinger, Abington, PA, for defendants.

pursuant to 28 U.S.C. § 1927. Because we decline jurisdiction over these actions, we will not

examine the merits of these requests and therefore deny them.